# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SHAWVER & SON, INC., an Oklahoma corporation,

      Plaintiff,

v.

CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Delaware corporation; and

UNITED STANDARD ELECTRIC LLC, an Oregon limited liability company,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:24-CV-00044-PRW
Judge Patrick R. Wyrick

## DEFENDANT CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.'S ANSWER COUNTERCLAIM, AND CROSS-CLAIMS

Defendant Consolidated Electrical Distributors, Inc. ("CED"), for its Answer to Plaintiff Shawver & Son, Inc.'s ("Shawver") Petition, denies every allegation in Plaintiff's Petition unless expressly stated otherwise herein, and further responds as follows[1]:

## PARTIES AND JURISDICTION

1.     CED admits the allegations in paragraph 1.

2.     CED admits it is a corporation organized under the laws of the state of Delaware. CED denies its principal offices are in Oklahoma.

3.     CED admits the allegations in paragraph 3.

---

[1] This Answer is not intended to address any of the claims against United Standard Electric, LLC ("USE") who is independently represented.

4.      The allegations in paragraph 4 state legal conclusions to which no response is required. To the extent any response is deemed to be required, CED admits it is subject to personal jurisdiction in Oklahoma and venue is proper in Oklahoma County with respect to Plaintiff's claims against CED.  CED denies the remaining allegations in paragraph 4.

## FACTS

5.      CED denies the first two sentences in paragraph 5 but admits it ordered and paid co-defendant United Standard Electric ("USE") for USE to manufacture and deliver twenty-four (24) 3000kVA, K-rated electrical transformers (the "Goods") in reliance on Plaintiff's written agreement to repurchase those same Goods from CED under the terms and conditions CED had provided to Plaintiff, which expressly included limited warranties and a disclaimer of implied warranties. CED admits USE manufactured the Goods.

6.      CED denies the allegations in paragraph 6.

7.      CED admits the allegations in paragraph 7.

8.      CED admits it regularly deals in electrical equipment and supplies, including electrical transformers. CED denies the remaining allegations in paragraph 8.

9.      CED admits that it and USE made certain representations and warranties to Shawver with respect to the Goods that became the basis of the bargain between Shawver and CED. Those representations and warranties included the following:

> All sales are expressly conditional on Buyer's agreement to the standard terms and conditions herein.
> * * * *
> The goods sold by [CED] are products of recognized manufacturers sold under their respective brand or trade name in accordance with their terms and conditions. [CED] shall use its best efforts to obtain from each manufacturer, in accordance with the manufacturer's

warranty (copies of which will be furnished upon request) or customary practice, the repair or replacement of goods that may prove defective in material, design, or workmanship. The foregoing shall constitute the exclusive remedy of Buyer and the sole obligation of [CED]. Except as to title, [CED] GIVES NO WARRANTY, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE. [CED] shall not, under any circumstances be liable for any special, direct, indirect, incidental, exemplary, liquidated, or consequential damages to persons or property arising out of or connected with the transactions contemplated hereby or the design, manufacture, subsequent sale or use of the goods, including, but not limited to, loss of profit or revenues, loss of use of the products, or any associated equipment, cost of capital, cost of substitute products, facilities, service, or replacement power, down time costs, or claims of Buyer's customers for such damages. [CED]'s maximum cumulative liability relative to all other claims and liabilities, including that with respect to direct damages and obligations under any indemnity, whether or not insured, will not exceed the cost of the goods or services giving rise to the claim of liability.

\* \* \* \*

Except to the extent otherwise specified by [CED] in its quotation, pro rata payments shall become due without setoff as shipments are made.

\* \* \* \*

**United Standard Electric LLC warrants that the Product sold hereunder will be of the kind and quality described in its Specification and will be free of defects in design, workmanship, and material.**

\* \* \* \*

In the event that the Product fails to comply with this standard warranty and United Standard Electric LLC is notified by Customer promptly, in writing, prior to any attempted repair not expressly sanctioned by United Standard Electric LLC, and within **twenty-four (24) months** from the date of invoice, **United Standard Electric LLC will correct confirmed non-conformities. . . . United Standard Electric LLC will correct the confirmed non-conformity, solely at its option, repairing or replacing the defective part or parts.**

\* \* \* \*

The foregoing Product warranty obligation of United Standard Electric LLC shall be void with respect to any non-conforming Product resulting from the Product having been subjected to negligence, accident, or damage by circumstances beyond United

Standard Electric LLC's control or when the Product has not been handled, monitored, stored, installed, protected, operated, or maintained in accordance with United Standard Electric LLC's. specifications, instructions, recommendations, or industry standard practices.

The United Standard Electric LLC warranty obligation shall also be void as it relates to any non-conformity resulting from a defect due to the Customer's design Specifications, the operation of the Product under abnormal conditions or contrary to specifications or instructions of United Standard Electric LLC and industry standard practices; or where such use results in excessive wear and tear (beyond normal); or where suitable testing (e.g. Megger, resistance, DGA, or other diagnostic tests) with documented results has not been performed prior to re-energization of the Product after an abnormal System trip or System event involving the Product; or where modifications, alterations or repairs have been made by Customer or a third party without the prior written consent of United Standard Electric LLC.

United Standard Electric LLC's repair or replacement obligations set forth herein are the Customer's exclusive remedy for any failure of United Standard Electric LLC to meet the design, material, and workmanship standards necessary to meet the Customer's Specification criteria.

CED denies the remaining allegations in paragraph 9.

10.    CED denies the allegations in paragraph 10 and refers the Court to the express warranties, terms, and conditions that became the basis for the bargain between CED and Plaintiff, including those set forth in CED's response to paragraph 9.

11.    CED denies the allegations in paragraph 11.

12.    CED denies the allegations in paragraph 12.

## **<u>FIRST CLAIM – BREACH OF CONTRACT</u>**

13.    CED denies the allegations in paragraph 13.

14.    CED denies the allegations in paragraph 14.

## SECOND CLAIM – BREACH OF WARRANTY

15.     CED admits that it made certain representations and warranties with respect to the Goods and incorporates its answers to paragraphs 9-11.

16.     CED denies the allegations in paragraph 16.

17.     CED denies the allegations in paragraph 17.

## THIRD CLAIM – NEGLIGENCE

18.     Paragraph 18 states a legal conclusion to which no response is required. To the extent any response is deemed to be required, CED denies the allegations in the paragraph.

19.     CED admits that the agreement with Plaintiff created a contractual duty on the part of USE as stated in the written terms and conditions that formed the basis for the purchase:

> United Standard Electric LLC warrants that the Product sold hereunder will be of the kind and quality described in its Specification and will be free of defects in design, workmanship, and material.
> \* \* \* \*
> In the event that the Product fails to comply with this standard warranty and United Standard Electric LLC is notified by Customer promptly, in writing, prior to any attempted repair not expressly sanctioned by United Standard Electric LLC, and within twenty-four (24) months from the date of invoice, United Standard Electric LLC will correct confirmed non-conformities. . . . United Standard Electric LLC will correct the confirmed non-conformity, solely at its option, repairing or replacing the defective part or parts.
> \* \* \* \*
> United Standard Electric LLC's repair or replacement obligations set forth herein are the Customer's exclusive remedy for any failure of United Standard Electric LLC to meet the design, material, and workmanship standards necessary to meet the Customer's Specification criteria.

CED further admits its agreed to "use its best efforts to obtain from each manufacturer, in accordance with the manufacturer's warranty (copies of which will be furnished upon request) or customary practice, the repair or replacement of goods that may prove defective in material, design, or workmanship. The foregoing shall constitute the exclusive remedy of Buyer and the sole obligation of [CED]."  CED denies the remaining allegations in paragraph 19.

20.     Paragraph 20 states a legal conclusion to which no response is required. To the extent any response is deemed to be required, CED denies the allegations in the paragraph.

21.     CED denies the allegations in paragraph 21.

22.     CED denies the allegations in paragraph 22.

23.     CED denies the allegations in paragraph 23.

24.     CED denies the allegations in paragraph 24.

## **AFFIRMATIVE DEFENSES**

CED sets forth the following affirmative defenses. CED reserves the right to amend and assert such additional defenses as may be appropriate when further information is obtained through discovery. By setting for these Affirmative Defenses, CED does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs on Shawver. Moreover, nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to allegations.

A.     The Petition fails to state a claim upon which relief may be granted against CED.

B.     Plaintiff's claims against CED are barred in whole or in part by the doctrine of estoppel (legal and equitable).

C.     Plaintiff's claims against CED are barred as a result of its prior material breach of the Agreement and non-compliance with the terms and conditions of its purchase of the Goods.

D.     Any injuries to Plaintiff or any other entity having an interest in the Goods or associated property that is the subject of this litigation were the result of intervening, superseding causes over which CED had no control.

E.     None of the acts or omissions of CED were the proximate cause of any injuries or damages alleged by Plaintiff or any other entity having an interest in the Goods or associated property that is the subject of this litigation.

F.     The damages sought by Plaintiff in this litigation are due in whole or in part to the negligence or fault of Plaintiff, USE, and/or third parties.

G.     Plaintiff's claims against CED are barred by the terms and conditions of the contract between CED and Plaintiff, and also by the terms and conditions set forth by USE that formed the basis for Plaintiff's purchase of the Goods.

H.     Plaintiff's claims may be barred by its failure to mitigate damages.

## STATEMENT OF FACTS COMMON TO COUNTERCLAIM AND CROSS-CLAIMS

1.     In January 2022, Plaintiff contacted CED with a request for a quote to obtain 24 electrical transformers ("Transformers") meeting certain detailed specifications for a data center which Plaintiff was helping to construct.

2.     Plaintiff supplied CED with the detailed specifications it wanted for the Transformers. Plaintiff's specifications sheet did not specify any testing compliance standards.

3.     Plaintiff's representative informed CED that a quick turn-around time and early delivery date was critical to Plaintiff and its customer.

4.     CED obtained a proposal for manufacture of the Transformers according to Plaintiff's specifications from USE and provided USE's proposal to Plaintiff with CED's price quote for the proposed transaction.

5.     Upon receipt of CED's proposal with USE's specifications, terms and conditions, Plaintiff held a proposal review meeting with its customer, USE's managing member, and CED to discuss the technical aspects of the proposal. No mention was made of testing standards at this meeting, but Plaintiff and its customer focused on USE's ability to ship the Transformers with lead times that were significantly shorter than other manufacturers in the market were currently offering.

6.     Plaintiff requested one revision to USE's manufacturing proposal to include Aluminum Windings on the Transformers.

7.     CED obtained USE's revised proposal, which again contained and referenced USE's specifications, terms and conditions, and provided that to Plaintiff with a revised quote of CED's price for the transaction.

8.     The terms and conditions provided to Plaintiff by CED at the time it quoted the price for delivering the Transformers to be built by USE include:

a.   "The unit(s) would be manufactured and tested as per design, specifications and supervision by [USE] in compliance with applicable ANSI, NEMA, and IEEE standards, and as by the customer specifications and sections as detailed below."

b.   "Transformer or transformers are quoted and designed for standard distribution application. If other duty is required (i.e. step-up duty, high altitude, tilt, K-Factor etc.), please specify for quote revision."

c.   "USE's transformers are designed, manufactured, and tested per applicable ANSI/IEEE and NEMA standards and are suitable for outdoor operation."

d.   "Standard Factory Tests per ANSI/IEEE."

e.   "All sales are subject to 'Standard Terms and Conditions of Sale 'USETC001.W34' included with this proposal. No other terms accepted without prior, written agreement.

f.   "[USE] warrants the Product sold hereunder will be of the kind and quality described in its Specification and will be free of defects in design, workmanship, and material. All conditions and requirements of this Section 8 (Warranty) must be conveyed by the Customer to the ultimate end-user of the Product, if the end-user is different than the Customer, otherwise the Warranty may be rendered void."

g.   "In the event that the Product fails to comply with this standard warranty and [USE] is notified by Customer promptly, in writing, prior to any attempted repair not expressly sanctioned by [USE], and within twenty-four (24) months from the date of invoice, [USE] will correct confirmed non-conformities. Given Customer compliance and notification to [USE], as

described just above, of any failure to conform to this standard warranty within the standard warranty period and customer delivery of the defective Product to the location designated by [USE], [USE] will correct the confirmed non-conformity, solely at its option, repairing or replacing the defective part or parts."

h. "[USE]'s repair or replacement obligations set forth herein are the Customer's exclusive remedy for any failure of [USE] to meet the design, material, and workmanship standards necessary to meet the Customer's Specification criteria. As such, correction of any confirmed non-conformity in the manner and for the period of time provided herein shall fully insulate [USE] from any liability under this warranty section, whether the claims of the Customer are based in contract, tort (including negligence and strict liability), indemnity, or any other legal theory with respect to or arising out of the Product."

i. "THE EXPRESS WARRANTIES SET FORTH IN THIS ARTICLE ARE EXCLUSIVE AND NO OTHER WARRANTIES OF ANY KIND, WHETHER STATUTORY, ORAL, WRITTEN, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE, SHALL APPLY. THE CUSTOMER'S EXCLUSIVE REMEDIES AND [USE]'S ONLY OBLIGATIONS ARISING OUT OF OR IN CONNECTION WITH DEFECTIVE PRODUCT, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE SHALL BE THOSE STATED HEREIN."

j. "The total aggregate, and cumulative liability of [USE] . . . shall in no event exceed the purchase order price of the specific Product in question."

k. "Under no circumstances shall [USE] be liable to Customer . . . for any special, incidental, indirect or consequential damages or losses of any nature . . . ."

l. "The remedies of the Customer set forth herein are exclusive with respect to the Product . . . ."

9.     On February 4, 2022, CED sent Plaintiff its revised quote with the specifications, terms, and conditions described above.

10.    On February 9, 2022, CED sent Plaintiff a final quote for $1,878,816 for the twenty-four Transformers, which also referenced the specifications, terms, and conditions for the transaction. Plaintiff approved this revised quote in writing and sent CED a purchase order number to reference.

11.    At the time Plaintiff approved USE's final quote, it knew CED was merely acting as a reseller, and also knew the Transformers it was committing to purchase would be shipped directly from USE to Plaintiff.

12.    In reliance on Plaintiff's approval of CED's price for the Transformers on USE's specifications, terms, and conditions, CED directed a purchase order to USE in which it committing to buy the 24 Transformers from USE for $1,459,368.00 upon certain referenced purchase terms and conditions.

13.    The purchase terms and conditions CED provided to USE included the following:

a.   "This order is expressly limited to acceptance in accordance with its terms, including those set forth below and on the other side hereof."

b.   "Seller expressly warrants that all the materials and articles covered by this order or other description or specification furnished by Buyer will be in exact accordance with such order, description or specification, merchantable and free from defects in material, workmanship and/or design. Such warranties shall survive delivery, and shall not be deemed waived either by reason of Buyer's acceptance of such materials or articles or by payment for them. Any deviation from this order on specification furnished hereunder, or any other exceptions or alterations must be approved in writing by an authorized representative of Buyer."

   c.  "Seller agrees to defend at its expense all claims and suits asserted or bought against the Buyer related to any claim arising out of goods or service supplied under this order or for any alleged defects in material, workmanship or design of the merchandise sold hereunder. In addition Seller shall indemnify and save the Buyer harmless from such claims, suits and judgments arising therefrom."

14.    On February 17, 2022, USE provided written confirmation for receipt <u>and acceptance</u> of CED's Purchase Order:  "Thank you for the order referenced above. United Standard Electric acknowledges receipt and confirms acceptance."

15.    On February 25, 2022, USE's representative sent CED revised drawings showing the accessories Plaintiff had specified for the Transformers, and CED forwarded them to Plaintiff, which approved them.

16.    In June 2022, when USE was delivering the first set of Transformers directly to Plaintiff, CED sent Plaintiff invoices for the Transformers being delivered. CED's invoices referenced CED's sales terms and conditions, which essentially confirmed CED and Plaintiff's prior arrangement that Plaintiff would purchase the Transformers with the express warranties, terms and conditions that had been supplied by USE.

17.    CED's sales terms and conditions to Plaintiff provide, in relevant part, that:

   a.  "All sales are expressly conditional on Buyer's agreement to the standard terms and conditions herein. Any of the terms and provisions of Buyer's order which are inconsistent with or in addition to the terms and conditions hereof shall not be binding on Seller and shall not be considered applicable to the sale or shipment of the merchandise referred to herein. Unless Buyer shall notify Seller in writing to the contrary as soon as practicable after Buyer's receipt hereof, acceptance of the terms and conditions hereof by Buyer shall be indicated, and, in the absence of such notification, the sale and shipment by Seller of the merchandise covered hereby shall be conclusively deemed to be subject to the terms and conditions hereof."

b. "The goods sold by Seller are products of recognized manufacturers sold under their respective brand or trade name in accordance with their terms and conditions. Seller shall use its best efforts to obtain from each manufacturer, in accordance with the manufacturer's warranty (copies of which will be furnished upon request) or customary practice, the repair or replacement of goods that may prove defective in material, design, or workmanship. The foregoing shall constitute the exclusive remedy of Buyer and the sole obligation of Seller. Except as to title, SELLER GIVES NO WARRANTY, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE."

c. "Seller shall not, under any circumstances be liable for any special, direct, indirect, incidental, exemplary, liquidated, or consequential damages to persons or property arising out of or connected with the transactions contemplated hereby . . . Seller's maximum cumulative liability relative to all other claims and liabilities, including that with respect to direct damages and obligations under any indemnity, whether or not insured, will not exceed the cost of the goods or services giving rise to the claim of liability."

d. "In the event that Buyer has contracted for or otherwise assumed with any other party any obligation or liability to an owner, contractor, construction manager, governmental entity, or any other person or entity responsible for the completion of any portion of any project in which Seller's goods will be used, the parties agree that Seller is not a party to such contract. Therefore, Seller does not assume any liability or obligation . . . under any such contract or agreement. Absent a written agreement to the contrary, signed by an authorized representative of Seller, Buyer releases and agrees to defend, indemnify and hold Seller harmless for any claims of any nature whatsoever related to any obligation, risk, liability or responsibility which was Buyer's under any contract or which was assumed by Buyer towards any owner, contractor, construction manager, governmental entity, or other party involving the goods or work supplied by Seller to fulfill any contractual requirement."

e. "Unless otherwise provided, deduct percentage cash discount shown in C/D column from total due (which is intended to include sales tax, if any is charged) if paid by 10th of the month following purchase, otherwise net payment is due by the 15th of the month following purchase."

f. "A service charge of 1 1/2% per month, but not to exceed the highest amount allowed by applicable state law, shall be made on all sums due Seller that have not been paid within thirty (30) days from the invoice date, and Buyer agrees to promptly pay said service charge. If Seller commences litigation or employs attorneys to collect payment of any amounts due it from Buyer, Buyer agrees to pay reasonable attorney's sums which may be due."

18.    CED paid USE for the Transformers under the terms of its agreement with USE, and USE shipped the Transformers to Plaintiff.

19.    Plaintiff paid CED's initial invoices for the Transformers but has not paid the last invoice, Invoice No. 5366-1093304, in the amount of $156,568.

20.    After a number of Transformers were delivered to Plaintiff, Plaintiff began to express concerns about oil leaks and results from field testing performed according to NETA standards, which were not specified in the terms and conditions that formed the basis of Plaintiff's purchase of the Transformers.

21.    Plaintiff asked USE to service the Transformers under its warranty and filter the oil in the Transformers. USE retained a contractor to provide field service and oil filtering for the Transformers, and as of late September, concluded that 18 of the 24 Transformers were fully ready to be tested and were ready for service. USE noted the remaining six Transformers had oil leaks repaired, were ready to be tested for electrical performance, and were electrically safe to operate, but had a defective vacuum-gauge accessory which would not hold pressure, and which USE agreed to replace when the new parts arrived.

22.     Plaintiff demanded more, and USE offered to pay for the oil-filtering and a three-year warranty instead of a two-year warranty, provided Plaintiff pay for the time of USE's contractor supervisor to ensure proper maintenance in order maintain the warranty.

23.     After the Transformers were energized in late autumn 2022, two of them failed. Following a repair attempt by USE, in March 2023, Plaintiff shipped five transformers to USE for offsite repair.

24.     In September 2023, Plaintiff claimed the Transformers were defective and demanded indemnification from CED.  In turn, CED demanded indemnification from USE.

25.     Subsequently, Plaintiff has informed CED that additional Transformers have failed, or failed a second time after initial repair, and that other Transformers have exhibited signs of potential failure.

26.     USE is subject to personal jurisdiction in Oklahoma because USE purposefully availed itself of the privilege of doing business in Oklahoma to such an extent that the exercise of personal jurisdiction is foreseeable. USE purposefully availing itself of Oklahoma law is demonstrated by its several contacts with Oklahoma, including: (1) USE sent its proposal for the Transformers to CED, in Oklahoma, for a customer, Plaintiff, located in Oklahoma; (2) USE agreed to manufacturer and sell Transformers to a company it knew was located in Oklahoma for utilization in a data center it knew was being constructed in Oklahoma; (3) USE shipped the Transformers to the Oklahoma company for the Oklahoma data center; and (4) USE contracted with an entity in Oklahoma to service

and repair its Transformers, in Oklahoma, in an effort to fulfill warranty obligations to the Oklahoma company.

## FIRST COUNTERCLAIM AGAINST PLAINTIFF
## PROMISSORY ESTOPPEL

CED, for its counterclaims against Plaintiff, alleges and states as follows:

27.    CED incorporates all prior paragraphs in its "Statement of Facts Common to Counterclaims and Cross Claims" as if fully set forth herein.

28.    When Plaintiff told CED in writing that it was approving USE's final proposal, and agreeing to pay $1,878,816.00 for the 24 Transformers, it made a clear and unambiguous promise to accept the Transformers as manufactured under USE's specifications, terms, and conditions.

29.    It was reasonably foreseeable to Plaintiff that CED would rely on Plaintiff's promise.

30.    CED reasonably and detrimentally relied on Plaintiff's promise.

31.    Plaintiff should be held to its promise to avoid undue hardship and unfairness to CED.

## SECOND COUNTERCLAIM AGAINST PLAINTIFF
## BREACH OF CONTRACT

32.    CED incorporates all prior paragraphs in its "Statement of Facts Common to Counterclaims and Cross Claims" as if fully set forth herein.

33.     Plaintiff promised to pay CED $1,878,816 for 24 Transformers built according to the specifications, terms, and conditions, supplied by USE, if CED would order them from USE.

34.     In reliance on Plaintiff's promise, CED entered into a contract with USE and paid USE for the Transformers.

35.     When the Transformers were scheduled for delivery, CED invoiced Plaintiff and sent Plaintiff its terms and conditions of sale.

36.     Plaintiff accepted delivery and began making payment under the terms and conditions CED had supplied to it with the original proposal from USE and with its invoices, at which point, the Contract between CED and Plaintiff was formed.

37.     Plaintiff received all 24 Transformers, but never remitted payment for the final invoice of $156,568.00 sent on December 29, 2022.

38.     Plaintiff's failure to pay for all the Transformers is a breach of its Contract with CED. As a result of Plaintiff's breach, CED has incurred damages in an amount equal to $156,568, plus interest thereon, at a rate equal to the lesser of (a) 1.5% per month or (b) the highest legal rate allowed by law, until paid in full.

## FIRST CROSS-CLAIM AGAINST USE
## BREACH OF CONTRACT

CED, for its cross-claims against Defendant United Standard Electric LLC, alleges and states as follows:

39.     CED incorporates all prior paragraphs in its "Statement of Facts Common to Counterclaims and Cross-Claims" as if fully set forth herein.

40.     CED entered into an agreement with USE, where USE promised to manufacture the Transformers and CED promised to pay USE for the Transformers (the "Agreement").

41.     CED's purchase terms and conditions were part of its Purchase Order, and USE USE accepted CED's purchase terms and conditions.

42.     CED's Purchase Terms and Conditions required USE to "defend at its expense all claims and suits asserted or bought against the [CED] related to any claim arising out of [the Transformers] supplied under this order or for any alleged defects in material, workmanship or design of the merchandise sold hereunder. In addition [USE] shall indemnify and save [CED] harmless from such claims, suits and judgments arising therefrom."

43.     USE's refusal to indemnify, defend at its expense, and hold CED harmless from Plaintiff's claims is a breach of the Agreement.

44.     USE's breach of contract has caused CED damages that continue to accumulate as this litigation proceeds.

## SECOND CROSS-CLAIM AGAINST USE
## <u>LEGAL INDEMNIFICATION</u>

45.     To the extent the Transformers have defects, such defects were not attributable to any act or omission by CED and could not have been detected or prevented by any level of care on the part of CED.

46.     To the extent the Transformers have defects which are attributable to USE's faulty design, manufacture, or service, USE is primarily liable for such defects. As a matter of law, USE must indemnify CED as the seller of the defective Transformers it manufactured. USE's failure to indemnify CED has caused CED damages that continue to accumulate as this litigation proceeds.

## <u>RELIEF REQUESTED</u>

WHEREFORE, CED demands entry of final judgment in its favor against Plaintiff and USE, that Plaintiff takes nothing on its claims against CED, that CED be awarded damages to be paid by Plaintiff and USE, plus interest, that CED be awarded its costs and reasonable attorneys fees as special damages, and for such additional relief as this Court deems just and appropriate.

Respectfully submitted,


/s/ Brooks A. Richardson
Brooks A. Richardson, OBA No. 18133
GABLEGOTWALS
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
T:  405.235.5500
F:  405.235.2875
brichardson@gablelaw.com

**Attorney for Defendant**
**Consolidated Electrical Distributors, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Sean P. Rieger, OBA #18817
Daniel L. Sadler, OBA #31211
Keith A. Barrett, OBA #30011
Joseph P. Krodel, OBA #35158
**RIEGER LAW GROUP LLC**
136 Thompson Drive
Norman, OK 73069

With respect to parties that have not had counsel enter an appearance, I hereby certify that I have transmitted the foregoing via U.S. Certified Mail/Return Receipt along with a Summons to appear and answer pursuant to Rules 4 and 5(a)(2) of the Federal Rules of Civil Procedure, to the following:

United Standard Electric LLC
c/o Registered Agents, Inc.
2355 State Street
Suite 101
Salem, OR 97301

*/s/Brooks A. Richardson*
Brooks A. Richardson